IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 14-652-2** |
| | : | |
| **ANTONIO LAREDO** | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                       **July 31, 2023**

     We sentenced Antonio Laredo to one-hundred sixty-eight-months custody a little over two years ago after he plead guilty to seventy-nine counts of heroin trafficking, money laundering, and engaging in a continuing criminal enterprise. We knew then of his medical issues. We granted the United States' motion for downward departure from a much longer period of custody justified by the admitted criminal conduct. He now moves for compassionate release based solely on chronic neck and back pain, deterioration of lumbar disks from a 2008 work-related accident, and further pain caused by an accident while in custody. We ordered and studied his medical records. The United States opposes release. He maintains self-care at his Facility. We have no basis to find the Facility is not treating and managing his pain. We find no extraordinary and compelling reason to release Mr. Laredo based on his cited medical concerns. We further find no basis for release based on Congress's sentencing factors even if we could find his present medical condition is an extraordinary and compelling reason for release. We deny his motion.

I.      Background

Our Grand Jury indicted Antonio Laredo and thirty-six other members of a Mexico-based drug trafficking organization on a variety of narcotics and money laundering charges in connection with the organization's importing more than 1,000 kilograms of heroin into the United States, including to the Philadelphia area, from 2008 through 2014.[1] Brothers Antonio, Ismael, and Ruben Laredo controlled and coordinated the operations of the heroin trafficking and money laundering activities and associated with the Mexican Los Rojos Cartel and Sinaloa Cartel.[2] The Grand Jury's May 6, 2015 superseding indictment charged Mr. Laredo with conspiracy to distribute one kilogram or more of heroin; distribution of one kilogram or more of heroin, and aiding and abetting; attempt to distribute one kilogram or more of heroin; possession with intent to distribute 1 kilogram or more of heroin, and aiding and abetting; conspiracy to commit money laundering; money laundering, and aiding and abetting; and, engaging in a continuing criminal enterprise.[3]

The United States Marshals arrested Mr. Laredo in Chiapas, Mexico on September 14, 2018 and held him in a facility in Villa Aldama, Veracruz for six months before extraditing Mr. Laredo to the United States.[4] Mr. Laredo made his initial appearance before Judge Caracappa on March 21, 2019.[5] Mr. Laredo began pretrial detention on March 20, 2019.[6] Mr. Laredo pleaded guilty to each of the seventy-nine Counts in the superseding indictment on January 16, 2020.[7]

The United States Probation Office calculated Mr. Laredo's sentencing guidelines as mandatory life imprisonment under the United States Sentencing Guidelines and 21 U.S.C § 848.[8] The United States moved for a downward departure under Section 5K1.1 of the Sentencing Guidelines.[9] We granted the United States' Motion after reviewing briefing and hearing argument during our July 12, 2021 sentencing.[10] We considered Mr. Laredo's hypertension,

diabetes, heart disease, and chronic back pain stemming from a 2008 work-related accident at sentencing.[11]

We sentenced Mr. Laredo to one-hundred sixty-eight (168) months imprisonment, followed by three years of supervised release, as to all counts to run concurrently.[12] Mr. Laredo, now fifty-five years old, is housed at FCI Allenwood Low and is currently scheduled to be released on September 14, 2030.[13] He served approximately sixty-five months, including good time credit.

Mr. Laredo requested compassionate release for medical reasons from FCI Allenwood Low Warden Rachel Thompson on June 12, 2023. Warden Thompson denied Mr. Laredo's request on June 20, 2023.[14] Mr. Laredo now moves *pro se* for compassionate release based on medical concerns.[15] Mr. Laredo has chronic neck pain, chronic back pain, and deterioration of lumbar disks from a 2008 work-related accident. A fall at Philadelphia Detention Center exacerbated his pain.[16] He also suffers from hypertension, hyperlipidemia, type II diabetes, and sinusitis.[17]

We ordered the United States to respond and file Mr. Laredo's updated medical records.[18] We considered the parties' thoughtful briefing and Mr. Laredo's medical records.[19] We deny Mr. Laredo's Motion for compassionate release because he does not establish extraordinary and compelling reasons to reduce his warranted sentence. We would deny Mr. Laredo's Motion even if he did establish extraordinary and compelling reasons because the pertinent sentencing factors weigh against release.

**II.   Analysis**

Mr. Laredo moves for compassionate release citing medical concerns.[20] The United States opposes Mr. Laredo's Motion.[21] The United States argues Mr. Laredo's medical

3

conditions, besides the chronic neck and back pain, are well-controlled and properly monitored by the Bureau of Prisons.[22] The United States contends the neck and back pain issues, while chronic and surgically uncorrectable, are being managed with physical therapy, electro-therapy, and medication.[23] The United States argues we already considered these health issues at the time of sentencing and they do not warrant extraordinary and compelling reasons necessary for compassionate release. The United States also argues consideration of the section 3553(a) sentencing factors counsel against release. The United States contends the severity of Mr. Laredo's crimes, the fact he has only served approximately 39% of his sentence, and his potential risk of danger to the community if released should inform our denial. We agree.

Congress allows us to grant compassionate release if Mr. Laredo: (1) "fully exhaust[s] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier;" (2) shows "extraordinary and compelling reasons warrant" a reduction; and (3) shows "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[24] Our Court of Appeals instructs policy statements are "not binding," but "shed[] light on the meaning of extraordinary and compelling reasons."[25] We also must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."[26] Mr. Laredo "bears the burden of proving that extraordinary and compelling reasons exist."[27]

### A. Mr. Laredo exhausted his administrative remedies.

Mr. Laredo exhausted his administrative remedies when Warden Thompson denied his June 12, 2023 Petition for compassionate release on June 20, 2023.[28] The United States does not

dispute Mr. Laredo exhausted under the Law.[29] We consider Mr. Laredo's Motion for compassionate release on the merits.

### B. Mr. Laredo does not present extraordinary and compelling reasons warranting relief.

Mr. Laredo seeks compassionate release because of his medical issues, including chronic neck pain, chronic back pain, deterioration of lumbar disks, hypertension, hyperlipidemia, type II diabetes, and sinusitis.[30] Mr. Laredo specifically states he is not seeking release based on COVID-19 but is suffering independently from his medical conditions.[31] The United States argues Mr. Laredo does not present extraordinary and compelling reasons warranting release because Mr. Laredo's conditions are managed in Bureau of Prisons custody, he does not present a terminal illness, and he does not establish he is unable to provide self-care while at FCI Allenwood Low.[32] We agree with the United States.

Our Court of Appeals instructs we should look to the policy statement in the United States Sentencing Guidelines § 1B1.13 to determine if extraordinary and compelling reasons exist.[33] The policy statement is not binding but "sheds light on the meaning of extraordinary and compelling reasons."[34] The "Medical Condition of the Defendant" section of the policy statement advises extraordinary and compelling reasons exist when the incarcerated person "is suffering from a terminal illness" or the incarcerated person is (1) suffering from a serious physical or medical condition; (2) suffering from a serious functional or cognitive impairment; or (3) experiencing deteriorating physical or mental health because of the aging process which substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.[35]

Judges within our Circuit are hesitant to grant early release when the incarcerated individuals' medical conditions do not diminish their ability to provide self-care within the

facility. Judge Leeson in *United States v. Kamuvaka* did not find extraordinary and compelling reasons exist when the incarcerated individual had "hypertension, diabetes, psoriasis, spinal arthritis, and a bony hip abnormality" but received treatment for these conditions and the conditions did not "diminish her ability to provide self-care within the environment of a correctional facility."[36] Judge Hillman in *United States v. Womble* did not find extraordinary and compelling reasons existed when "type II diabetes, hypertension, high cholesterol, and obesity" made incarceration challenging but the "evidence in the record . . . [did not] show" an inability to provide self-care.[37]

We are persuaded by Judges Leeson's and Hillman's reasoning. Mr. Laredo, while suffering from several medical conditions, establishes no evidence he is suffering from a terminal illness or is his ability to provide self-care is impaired in any way. Warden Thompson represents Mr. Laredo can address his "normal living needs" while incarcerated.[38] Mr. Laredo does not challenge the Warden's representation. Our review of his medical records also show the Facility is treating him for his medical conditions and his diabetes, hypertension, depression, and anxiety.[39] We are sympathetic to Mr. Laredo's chronic neck and back pain, but his current treatment plan of therapies and medications allows Mr. Laredo to continue to provide self-care and go about his daily routine at FCI Allenwood Low. We do not find extraordinary and compelling reasons warrant Mr. Laredo's release. We must deny Mr. Laredo's Motion.

**C. Congress's sentencing factors counsel against release.**

Our consideration of Congress's sentencing factors in 18 U.S.C. § 3553(a) and all pertinent circumstances further counsel against release even if Mr. Laredo established extraordinary and compelling circumstances. The United States argues Mr. Laredo is a danger to the community given the severe nature of his crimes and releasing Mr. Laredo after serving only

sixty-five months—about 39% of his one-hundred sixty-eight-month sentence—would not reflect the seriousness of the offense, promote respect for the law or provide a just punishment for the offense.[40] We agree with the United States.

Congress allows us to reduce a sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable."[41] We "should assess whether [the section 3553(a)] factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence."[42]

Our consideration of the sentencing factors counsels against release. We considered the section 3553 sentencing factors both at Mr. Laredo's July 12, 2021 sentencing and again today. We find his serving sixty-five months of a one-hundred sixty-eight-month sentence insufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and adequately deter future criminal conduct by Mr. Laredo.

Mr. Laredo's criminal conduct involving the coordination of and massive distribution of illegal narcotics in our District and other Districts also informs our decision he is a danger to the community. He avoided prosecution hiding in Mexico for years after the Grand Jury's superseding indictment. He acted as an experienced manager of a large drug trafficking organization. We have no reason to find he would not create harm.

### III. Conclusion

We deny Mr. Laredo's Motion for compassionate release. We do not find Mr. Laredo's medical conditions constitute extraordinary and compelling reasons for early release because they do not impair his ability to provide self-care at FCI Allenwood Low. We also find our

consideration of Congress's sentencing factors, both at the time of sentencing and today, support our decision to not reduce Mr. Laredo's sentence as originally imposed.

---

[1] ECF No. 23. A full summary of the offense conduct can be found in the United States' sentencing Memorandum. *See* ECF No. 1367.

[2] *See* ECF No. 1367.

[3] *Id*. Our Grand Jury charged Mr. Laredo in Counts 1, 2, 3, 4, 5, 10, 12 14, 15, 17, 19, 20, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 42, 44, 45, 46, 47, 48, 49, 50, 51, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 106, 107 and 108 of the Superseding Indictment, a total of seventy-nine counts.

[4] ECF No. 1367.

[5] ECF No. 1182.

[6] Mr. Laredo stipulated to pretrial detention. ECF Nos. 1184, 1186.

[7] ECF No. 1277.

[8] ECF No. 1367.

[9] *Id*.

[10] ECF No. 1370. *See also* ECF Nos. 1351, 1365. We originally scheduled sentencing for May 18, 2020. ECF No. 1281. Mitigation of the COVID-19 pandemic required we adjourn Mr. Laredo's sentencing until July 12, 2021. ECF Nos. 1300, 1310, 1365.

[11] ECF No. 1440 at 3.

[12] ECF No. 1373.

[13] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results.

[14] *See* ECF No. 1435 at 9.

[15] ECF No. 1435; *see* 18 U.S.C. § 3582(c)(1)(A).

[16] ECF No. 1435 at 1.

[17] *Id.*

[18] ECF No. 1436.

[19] ECF Nos. 1435, 1439, 1440.

[20] ECF No. 1435.

[21] ECF No. 1440.

[22] *Id.* at 4.

[23] *Id.* at 5.

[24] 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) ("[A] a prisoner's motion may be granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable.") (further citation omitted).

[25] *Andrews*, 12 F.4th at 259–60.

[26] 18 U.S.C. § 3582(c)(1)(A).

[27] *United States v. Smith*, No. 09-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020).

[28] *See* ECF No. 1435 at 1, 9.

[29] ECF No. 1440 at 4.

[30] ECF No. 1435 at 1.

[31] *Id.*

[32] ECF No. 1440 at 11. Warden Thompson noted in her June 20, 2023 denial Mr. Laredo is able to maneuver within the living quarters, able to walk to health services, able to walk to food service, and is able to address normal living needs. ECF No. 1435.

[33] *Andrews*, 12 F.4th at 260.

[34] *Id. See also United States v. Jefferson*, No. 21-2020, 2021 WL 4279626, at *2 (3d Cir. Sept. 21, 2021) ("[W]e also explained in *Andrews* that it is not error for a district court to consider the

policy statement in its 'extraordinary and compelling' analysis, even if the policy statement is not ultimately binding on the court.").

[35] U.S.S.G. § 1B1.13, Application Note 1.

The United States Sentencing Commission proposed new amendments for reductions in term of imprisonment under 18 U.S.C. § 3582(c)(1)(A) on January 12, 2023. The proposed changes potentially relevant to Mr. Laredo would expand the definition of extraordinary and compelling reasons to include incarcerated citizens suffering from a medical condition requiring long-term or specialized treatment not being provided in a timely or adequate manner. Other proposed changes include expansion of the family circumstances category, unmitigable risk of suffering severe medical complications from exposure to ongoing outbreaks of infectious diseases and public health emergencies, additions of "victim of assault" and "changes in law" categories, and rephrasing of the "Other Circumstances" catch-all provision. *See* Preliminary "Reader-Friendly" Version of Proposed Amendments (ussc.gov) at 6–8 (last visited Feb. 8, 2023). The Sentencing Commission voted on April 5, 2023 to promulgate amendments to the federal sentencing guidelines, but those changes will not take effect until at least November 1, 2023. *See* https://www.ussc.gov/about/news/press-releases/april-5-2023.

[36] *United States v. Kamuvaka*, No. 09-294, 2023 WL 3737107, at *2 (E.D. Pa. May 31, 2023).

[37] *United States v. Womble*, No. 13-507, 2022 WL 1500957, at *2 (D.N.J. May 11, 2022).

[38] ECF No. 1435 at 9.

[39] *See* ECF No. 1439.

[40] *See* ECF No. 1440 at 12–14; 18 U.S.C. § 3553(a)(2)(A).

[41] 18 U.S.C. § 3582(c)(1)(A).

[42] *United States v. Iezzi*, No. 17-157, 2021 WL 5832767, at *6 (W.D. Pa. Dec. 9, 2021).